```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION

JORDAN   OUTDOOR   ENTERPRISES, *
LTD.,
                                *
     Plaintiff,
                                *
vs.                                     CASE NO. 4:12-CV-297 (CDL)
                                *
HUBEI WILD TREES TEXTILES CO.,
LTD.,                           *

     Defendant.                 *
```

O R D E R

Plaintiff Jordan Outdoor Enterprises, Ltd. ("Jordan") alleges that Defendant Hubei Wild Trees Textiles Co. ("Wild Trees") is willfully selling products that infringe on its copyrighted camouflage patterns to distributors who resell them in the state of Georgia. Jordan filed suit for copyright infringement, unfair competition under federal and Georgia law, and cancellation of federal copyright registrations. Jordan also alleges a claim under the Georgia Deceptive Trade Practices Act. Wild Trees seeks dismissal of the entire action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, partial summary judgment. For the following reasons, Wild Trees' motion to dismiss (ECF No. 26) is granted, and its alternative motion for partial summary judgment is terminated as moot.

## 12(b)(2) MOTION TO DISMISS STANDARD

When a plaintiff seeks to have a court exercise personal jurisdiction over a nonresident defendant, that plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). If the defendant submits evidence challenging jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier* ex rel. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

## JURISDICTIONAL FACTS

The Court permitted the parties to engage in limited jurisdictional discovery to ascertain the full nature of Wild Trees' contacts with the state of Georgia. The present record reveals the following.

Jordan is a Georgia corporation in the camouflage industry with its principal place of business in Columbus, Georgia. Jordan owns the well-known Realtree and Advantage lines of camouflage patterns. Wild Trees is a designer and manufacturer of camouflage goods with its only place of business in Hubei,

2

China.  Wang Dep. 12:3-13:1, ECF No. 42-7.  All design and manufacturing takes place in Hubei.  Wang Decl. ¶ 6, ECF No. 26-2.  Wild Trees has never sold or shipped any goods to Georgia, registered to conduct business in Georgia, or had an agent for service in Georgia.  *Id.* ¶¶ 3-4.  Wild Trees has never had any subsidiaries, offices, employees, real or personal property, records, or assets in Georgia.  *Id.* ¶¶ 2-3.  Wild Trees has never negotiated any business deals with any retailer, distributor, wholesaler, or manufacturer in Georgia or placed any advertisements in Georgia.  *Id.* ¶ 5.

Wild Trees maintains a website at www.wildtree.com.cn, and Wild Trees does not place any restrictions on who can access it.  Wang Dep. 24:15-25:8.  Online sales cannot be conducted through the website, even though it has an "on-line query" section.  *Id.* at 28:22-29:10.  Wild Trees also has a catalogue in English.  Pl.'s Resp. in Opp'n to Mot. to Dismiss [hereinafter Pl.'s Resp.] Ex. J, Wild Trees Catalogue, ECF No. 42-11.  Wild Trees maintains that the catalogue has been distributed only to clients who are located in or travel to China.  Wang Dep. 28:4-21.  Wild Trees has obtained nine U.S. copyrights for camouflage patterns that Jordan contends infringe on its copyrighted camouflage patterns.  Pl.'s Resp. Ex. N, Wild Trees Copyright Registrations, ECF No. 42-15.  Wild Trees has also obtained a U.S. trademark registration for the Wild Trees mark used in

3

connection with the allegedly infringing camouflage goods. Pl.'s Resp. Ex. M, Wild Trees Trademark Registration and Application, ECF No. 42-14 (certifying that Wild Trees engages in interstate commerce in the United States).

Wild Trees sells its camouflage goods to distributors such as Jack Pyke of England ("Jack Pyke") and Wildfowler Outfitter, Inc. ("Wildfowler"). Wang Dep. 32:11-34:4; *see also id.* at 10:20-11:24 (explaining that Wild Trees made sales to Jack Pyke as recently as December 2013 and to Wildfowler as recently as May 2013). Wild Trees has sold goods in the United States only to Wildfowler in Minnesota. *Id.* at 23:7-24:1. In 2010, Tom Jacobsen of Wildfowler visited Wild Trees in China to arrange for Wild Trees to manufacture clothing out of several camouflage patterns, including Wild Trees' patterns, which Wildfowler would purchase and resell in the U.S. *Id.* at 23:10-17, 35:4-36:2. Wildfowler purchased at least $668,500 worth of allegedly infringing products from Wild Trees from 2011 to 2013. Jacobsen Decl. ¶¶ 6, 13, ECF No. 42-1; *see also* Pl.'s Resp. Ex. C, Commercial Invoice (Aug. 23, 2013), ECF No. 42-4 (reflecting $202,199.57 worth of goods shipped from Wild Trees to Wildfowler in Minnesota); Pl.'s Resp. Ex. D, Sales Confirmation (Apr. 26, 2012), ECF No. 42-5 (reflecting $166,388.96 worth of goods sold by Wild Trees to Wildfowler in Minnesota); Wang Dep. 36:19-37:20 (identifying sales confirmation for all 2012 sales to

4

Wildfowler); Pl.'s Resp. Ex. G, Email from T. Jacobson to W. Wang (Oct. 25, 2011), ECF No. 42-8 (discussing $100,000 shipment); Pl.'s Resp. Ex. E, Email from T. Jacobsen to W. Wang (July 28, 2011), ECF No. 42-6 (discussing $300,000 purchase order); Pl.'s Resp. Exs. H-I, Bills of Lading (Aug. 2012 – Sept. 2013), ECF Nos. 42-9 to 42-10 (noting Minnesota as place of delivery).

Wildfowler sells and ships these products throughout the United States, including Georgia. Jacobsen Decl. ¶¶ 7-10. Wildfowler has filled and will continue to fill orders received by Georgia customers. *Id.* ¶ 12. Wildfowler currently has no record of any Georgia sales; internet sales data from 2011-2012 were lost during a software upgrade. *Id.* ¶ 11. On July 18 and September 11, 2012, Jordan purchased allegedly infringing clothing from Wildfowler's website and had the order shipped to Georgia. Pl.'s Resp. Ex. K, Wildfowler Invoices, ECF No. 42-12. On September 16, 2012, Jordan purchased allegedly infringing clothing from Jack Pyke's website, also shipping the order to Georgia. Pl.'s Resp. Ex. L, Jack Pyke Invoice, ECF No. 42-13.

DISCUSSION

To determine whether Wild Trees is subject to personal jurisdiction, the Court engages in a two-step inquiry. *Diamond Crystal*, 593 F.3d at 1257. First, the Court must determine whether the exercise of personal jurisdiction would be

5

appropriate under Georgia's long-arm statute. *Id.* If the requirements of the long-arm statute are met, the Court must then determine whether the exercise of personal jurisdiction would comport with the Due Process Clause of the United States Constitution. *Id.* at 1257-58.

Jordan argues that the Court has jurisdiction over Wild Trees pursuant to subsection 3 of Georgia's long-arm statute, which provides that a court may exercise personal jurisdiction over a nonresident if he or an agent "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor . . . derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). Jordan argues that Wild Trees' acts of infringement committed in China cause tortious injury to Jordan in Georgia and asserts that Wild Trees "has likely derived substantial revenue from Wildfowler's sales of its infringing goods to Georgia." Pl.'s Resp. 10, ECF No. 42.

While the facts show that Wild Trees derived at least $668,500 from goods sold to Wildfowler, there is insufficient evidence to indicate that a substantial amount of revenue came from goods resold in Georgia. Even though Wildfowler lost the internet sales data for 2011-2012, there is no evidence from which to reasonably infer that internet sales to Georgia would have reflected substantial revenue. Jordan offers no evidence

6

of internet sales to Georgia before or after the data loss and no evidence of non-internet sales to Georgia at any time. While Tom Jacobsen, owner and CEO of Wildfowler, does state that Wildfowler has sold and shipped Wild Trees' products to Georgia residents, he fails to give any indication of sales volume from which to infer an amount or proportion of revenue. The only evidence of any revenue actually derived from goods Wildfowler resold in Georgia shows that Jordan representatives purchased two parkas at $47.95 each. Wildfowler Invoices 1-2. Even if the Court strains to construe all reasonable inferences from the scarce evidence available in Jordan's favor, the record falls far short of establishing that Wild Trees derived *substantial* revenue from what Wildfowler has sold and shipped to Georgia residents.

Jordan makes no real attempt to demonstrate that Wild Trees "regularly does or solicits business" or "engages in any other persistent course of conduct" in Georgia within the meaning of subsection 3 or that any other subsection of the long-arm statute has been met.[1]  O.C.G.A. § 9-10-91. Because Jordan has

---

[1] Jordan asserts that Wild Trees is "directly and actively involved" in selling infringing products in Georgia through Wildfowler and that it is indisputable that they "acted together" to do so, Pl.'s Resp. 4; however, Jordan cites absolutely no evidence to indicate that Wildfowler or any other distributor is an agent of Wild Trees such that online sales from their independent websites may be imputed to Wild Trees directly, *cf. Meier*, 288 F.3d at 1275 (imputing resident subsidiaries' actions to nonresident parent company based on evidence

failed to show that Wild Trees' conduct meets the independent requirements of Georgia's long-arm statute, the Court dismisses the action for lack of personal jurisdiction.[2]

## CONCLUSION

The Court grants Defendant's motion to dismiss this action for lack of personal jurisdiction (ECF No. 26) and terminates Defendant's alternative motion for partial summary judgment as moot.

IT IS SO ORDERED, this 9th day of April, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

that subsidiaries were corporate formality and agents of parent company).

[2] Having found insufficient evidence that Georgia's long-arm statute permits the exercise of personal jurisdiction over Wild Trees, there is no need to reach the due process jurisdictional analysis. *Diamond Crystal*, 593 F.3d at 1267. The Court also declines to exercise jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), because it appears that Wild Trees would be subject to personal jurisdiction in Minnesota.